In the Matter of Douglas Henry NEBEL, Debtor.

Douglas Henry NEBEL, Plaintiff,

v.

Peggy RICHARDSON, Commissioner, Internal Revenue Service of the United States of America, and the Internal Revenue Service of the United States of America, and M. Beri Balka, Director, Nebraska Department of Revenue, and the Nebraska Department of Revenue, and Richard Myers, Interim Chapter 7 Trustee, Defendants.

Bankruptcy No. BK91–82456.
Adv. No. A93–8182.

United States Bankruptcy Court, D. Nebraska.

Oct. 28, 1994.

Ann Nolan and D. Milo Mumgaard of Legal Aid Soc., Inc., for debtor.

Karen Baker, Washington, DC, for U.S.

Christopher Curzon of Schmid, Mooney & Frederick, P.C., Omaha, NE, for trustee.

James Woodruff, Lincoln, NE, for Nebraska Dept. of Revenue.

### MEMORANDUM

TIMOTHY J. MAHONEY, Chief Judge.

Hearing was held on August 26, 1994. Appearing on behalf of debtor was Ann Nolan and D. Milo Mumgaard of Legal Aid Society, Inc. Appearing on behalf of the United States was Karen Baker of Washington, D'C. Appearing on behalf of the trustee was Chris Curzon of Schmid, Mooney & Frederick, P.C., Omaha, Nebraska. Appearing on behalf of the Nebraska Department of Revenue was James Woodruff of Lincoln, Nebraska. This memorandum contains findings of fact and conclusions of law required by Fed. Bankr.R. 7052 and Fed.R.Civ.P. 52. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(A) and (O).

### Background

The debtor, Douglas Henry Nebel, filed a petition for Chapter 7 bankruptcy relief on December 16, 1991. First National Bank of Walthill (the Bank) held a security interest in the debtor's livestock and crops. On approximately December 24, 1991, the debtor and the Bank entered into a stipulation to grant the Bank relief from the automatic stay to immediately dispose of quarantined livestock [hereinafter this asset sale is the "livestock sale"]. Exhibit B. The stipulation was approved on December 31, 1991, after the

Court found that the Chapter 7 trustee and the debtor consented to relief from the automatic stay. Exhibit C. All livestock were sold in two separate sales, and all of the proceeds were remitted to the Bank by January 10, 1992.

The first meeting of creditors was held on January 14, 1991. Shortly thereafter on January 24, 1991, the trustee filed a *Report of No Distribution and Notice of Intended Abandonment.* Exhibit D. The trustee did not send notice of the intended abandonment to any interested parties. On February 4, 1992, the Bank and another secured creditor, Cropmate Company (Cropmate), filed a joint motion for relief from the automatic stay, which sought permission from the Court to sell the debtor's crops and farm machinery. Exhibit E. The trustee consented and stipulated to the joint motion for relief on February 7, 1992. United States' Exhibit 1. The Court granted the motion for relief from the automatic stay on March 3, 1992. Exhibit F.

On March 12, 1992, the grain was sold [hereinafter this asset sale is the "grain sale"], and the proceeds were applied to the Bank's and Cropmate's liens. The debtor was discharged, and the bankruptcy case was closed on March 24, 1992. Exhibit G. The farm machinery was sold on April 3, 1992 [hereinafter this asset sale is the "machinery sale"], which was after the case was closed but pursuant to the order granting relief from the automatic stay, and the proceeds were applied to the Bank's and Cropmate's liens.

On April 7, 1993, the debtor moved to reopen the bankruptcy case after the Internal Revenue Service and the Nebraska Department of Revenue charged the debtor for the taxes due on the proceeds from the sales of the assets described above. This Court granted the debtor's motion on July 26, 1993.

The debtor initiated this adversary proceeding pursuant to 11 U.S.C. § 505 against the United States, the State of Nebraska and the Chapter 7 trustee to obtain a determination of the debtor's tax liability. The debtor takes the position that the trustee did not properly abandon the assets, and therefore, the estate is liable for the taxes. In the alternative, the debtor argues that even if the trustee did follow the correct procedure for abandonment, the trustee retained control over and administered the assets at issue, and therefore, the estate is liable for the resulting taxes.

The United States, acting on behalf of the IRS, has filed a motion for summary judgment. The United States alleges that the trustee abandoned the assets to the debtor before the asset sales and therefore, when the assets were sold to satisfy the Bank's and Cropmate's security interests, the assets belonged to and thus were taxable to the debtor, not the bankruptcy estate. The Nebraska Department of Revenue requests that any final determination of federal tax liability be applicable to the state's tax claim.

The trustee takes the position that he did not take any of the assets into his custody, that he did not exercise any control over the assets, and that he did not pay any money to creditors on behalf of the estate. Therefore, he contends that all property, and thus all resulting tax liabilities, were abandoned to the debtor.

### Decision

The motion for summary judgment filed by the United States is denied. The tax liability is that of the estate and not the debtor. Summary judgment will be entered in favor of the debtor/plaintiff and against all defendants.

### Discussion

#### A. General Rule

■ Property abandoned by the trustee to the debtor is a non-taxable event to the bankruptcy estate, and if the abandoned property is subsequently sold, the bankruptcy estate is not liable for the resulting tax liability. In re Popp, 166 B.R. 697, 699 (Bankr.D.Neb.1993); *Samore v. Olson (In re Olson),* 930 F.2d 6, 8 (8th Cir.1991).

#### B. Standard for Summary Judgment

Motions for summary judgment are filed pursuant to Federal Bankruptcy Rule 7056, which incorporates Rule 56 of the Federal Rules of Civil Procedure. A summary judg-

ment motion is appropriate "if the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.Bankr.R. 7056(c); Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986).

■ The burden is on the United States to establish both that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. *United States Gypsum Co. v. Greif Bros. Cooperage Corp.*, 389 F.2d 252 (8th Cir.1968). The materials submitted on a motion for summary judgment are viewed in a light most favorable to the party opposing the motion, and that party should be given the benefit of all inferences reasonably deducible from the evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

### C. Statutory Authority for Abandonment

Property is abandoned pursuant to Section 554 of the Bankruptcy Code, which provides:

(a) After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.

(b) On request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property that is burdensome to the estate or that is of inconsequential value and benefit to the estate.

(c) Unless the court orders otherwise, any property scheduled under section 521(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title.

(d) Unless the court orders otherwise, property of the estate that is not aban-

doned under section (a) or (b) of this section and that is not administered in the case remains property of the estate.

11 U.S.C. § 554 (Norton Bankr Code Pamphlet 1991–1992 Ed).

Section 554 abandonments are executed in accordance with Federal Bankruptcy Rule 6007, which provides:

(a) **Notice of Proposed Abandonment or disposition; Objections.** Unless otherwise directed by the court, the trustee or debtor in possession shall give notice of a proposed abandonment or disposition of property to the United States trustee, all creditors, indenture trustees and committees elected pursuant to § 705 or appointed pursuant to § 1102 of the Code. An objection may be filed and served by a party in interest within 15 days of the mailing of the notice, or within the time fixed by the court.

(b) **Motion by Party in Interest.** A party in interest may file and serve a motion requiring the trustee or debtor in possession to abandon property of the estate.

(c) **Hearing.** If a timely objection is made as prescribed by subdivision (a) of this rule, or if a motion is made as prescribed by subdivision (b), the court shall set a hearing on notice to the United States trustee and to other entities as the court may direct.

Fed.R.Bankr.P. 6007 (Norton Bankr Rules Pamphlet 1991–1992 Ed) (editorial marks which reflect amendments to the Federal Bankruptcy Rules are omitted).[1] The Nebraska Rules of Bankruptcy Procedure in effect when this cause of action arose do not address motions to abandon property. *See*, Neb.R.Bankr.P. (1992).[2]

### (1) Statutory Abandonment Under 11 U.S.C. § 554(a) and (b)

■ The trustee takes the position that the assets were abandoned pursuant to the *Trustee's Report of No Distribution and No-*

---

1. Subsection (c) to Fed.R.Bankr.P. 6007 has been deleted from Rule 6007. *See* Fed. R.Bankr.P. 6007 (1994).

2. *But see*, Neb.R.Bankr.P. 9014 & Appendix A (1993) (providing that parties must comply with notice and hearing requirements for motions to abandon property).

*tice of Intended Abandonment* (the Report), which states:

> I have neither taken into my custody and control any property nor paid any money on account of this estate; . . . . Any non-exempt real or personal property listed by the debtor(s) has no realizable value of the estate and is burdensome. It is in the best interest of all parties in interest that any such non-exempt real or personal property be deemed abandoned pursuant to notice of the first meeting of creditors and 11 U.S.C. § 554(c).

Exhibit D.

The notice of the first meeting of creditors, which was referred in the Report, was filed more than one month before the Report was filed. The notice described the abandonment procedure relied on by the trustee as follows:

> Within 21 days after the Section 341(a) meeting, the Trustee will file with the Court a list of property to be abandoned. If no objection to the list is filed within 10 days after the 21 day deadline, the property will be deemed abandoned without further action by the court.

Exhibit A.

The notice of the first meeting of creditors is a computer generated form prepared and mailed by the Clerk to all interested parties. The trustee did not mail notice of the Report to any interested parties.

Notice and hearing are required conditions of Section 554, except under subsection (c) to Section 554. Fed.R.Bankr.P. 6007 (Norton Bankr Rules Pamphlet 1991–1992, Advisory Committee Note (1983), p. 374). The Advisory Committee Notes accompanying Rule 6007 state that the trustee can simplify the abandonment process in an unadministered case by including the notice of abandonment with the notice of the first meeting of creditors, as was done in this case. Fed. R.Bankr.P. 6007 (Norton Bankr Rules Pamphlet 1991–1992, Advisory Committee Note (1983), p. 374). This practice has been criticized, however, because at the commencement of the case the trustee has not yet examined the debtor and has no knowledge as to whether he or she will abandon any property. Fed.R.Bankr.P. 6007 (Norton

Bankr Rules Pamphlet 1991–1992, Editors' Comment, p. 375).

In *Pioneer Inv. Servs. v. Brunswick Assoc. Ltd. Partnership,* the Supreme Court held that the notice of a claims bar date, which was buried in the midst of boilerplate language in the notice for the first meeting of creditors, was ambiguous, and the Court gave significant weight to this fact when finding that the attorney who missed the bar date acted with excusable neglect. — U.S. ——, —— - ——, 113 S.Ct. 1489, 1499–1500, 123 L.Ed.2d 74 (1983). *Brunswick* applies to this case because the trustee's notice of abandonment is comparably deficient. The purported notice of abandonment is located at the bottom of the *Notice of Commencement of Case Under Chapter 7 of the Bankruptcy Code, Meeting of Creditors, and Fixing of Dates.* Exhibit A. The complete *Notice of Commencement of Case* is printed in extremely small type and in boilerplate language.

Even though these factors alone may not be enough to excuse a party from not reading the Report, these factors in conjunction with the following factors do constitute good cause for finding that the notice was inadequate. First, the dates given for objecting to the proposed abandonment do not coincide with the period to file objections given under Rule 6007. Second, when the first meeting notice containing the future abandonment language was issued, the trustee had yet to examine the debtor. Finally, a determination as to what property would be abandoned was not made until one month after this notice was sent to interested parties. Therefore, the notice contained in Exhibit A is inadequate to act as the equivalent of a motion to abandon property. *Accord Killebrew v. Brewer (In re Killebrew),* 888 F.2d 1516 (5th Cir.1989) (holding that the notice of abandonment contained in the notice of commencement of case was inadequate because it was vague as to what property would be abandoned).

(2) *Abandonment Under 11 U.S.C. § 554(c)*

Even though the notice is not adequate, the abandonment may be valid under Section 554(c), which permits a trustee to abandon property without providing notice of the pro-

posed abandonment to interested parties. 11 U.S.C. § 554(c) (Norton Bankr Rules Pamphlet 1991–1992). Pursuant to Section 554(c), "property is deemed abandoned if it is not administered. A hearing is not required by the statute." Fed.R.Bankr.P. 6007 (Norton Bankr Rules Pamphlet 1992–1993, Editors' Comment, p. 374). No notice is required under subsection (c) because the property is not deemed abandoned until the case is closed. *Schwaber v. Reed (In re Reed)*, 940 F.2d 1317, 1321 (9th Cir.1991); 4 COLLIER ON BANKRUPTCY ¶ 554.02[5], at 554–11 to 554–12 (15th ed. 1994) ("When there is no court order directing abandonment, the language of subsection (c) deems abandoned to the debtor *any* scheduled property of the estate that is unadministered at the close of the case."). The trustee stated in the Report that he was abandoning property pursuant to Section 554(c).

If the trustee abandoned any property under Section 554(c), it was only that property which was "not administered" at the time the case was closed. If the debtor is liable for taxes resulting from the sale of the assets, the tax liability could only be for gain from the sale of those assets which were "not administered" by the trustee before the bankruptcy case was closed.

To determine whether each asset sale—the livestock sale, the grain sale and the machinery sale—was conducted as part of the administration of the estate or occurred after the assets were abandoned to the debtor requires an examination of the interests that the trustee retained in each of the assets sold.

■ The livestock sale was conducted before the trustee conducted the first meeting of creditors and before the trustee filed the Report. Abandonment did not occur under Section 554(c) until the case was closed on March 24, 1992. Exhibit G. Even though the property was not abandoned pursuant to Section 554, the trustee and the United States take the position that the orders granting relief from the automatic stay entered on December 31, 1991, and March 3, 1992, took the property out of the estate before the property was administered, and therefore, the trustee did not administer the

livestock or the proceeds of sale of the livestock. In other words, it is the position of the trustee and the United States that the orders for relief from the automatic stay actually transferred property from the estate to the debtor in the same manner as a formal abandonment.

The following cases, all of which involve motions for relief from the automatic stay and do not directly involve motions to abandon, were cited by the United States and the trustee as authority for their position: *In re Griggs*, 82 B.R. 532, 533 (Bankr.W.D.Mo. 1988) (holding that once the automatic stay is lifted, the property ceases to be property of the estate, and there is no longer any power of abandonment); *Wilson v. Bill Barry Enters.*, 822 F.2d 859, 861 (9th Cir.1987) (holding that the bankruptcy court relinquishes jurisdiction over estate property when it grants relief from the automatic stay); *First Nat'l Bank of Maryland v. United States Wall Corp. (In re Incor, Inc.)*, 113 B.R. 212, 215 (D.Md.1990) (stating that the lifting of the automatic stay was the equivalent to an abandonment, but also stating that the lifting of the automatic stay destroyed the debtor's property interest as well); *Hood v. Williams (In re Hood)*, 92 B.R. 648, 655–56 (Bankr. E.D.Va.1988) (stating that the status of property after relief from the automatic stay is granted is similar to that following an abandonment, but noting that the subject property "may technically and temporarily" remain property of the estate after relief from the automatic stay is granted); *Fisher v. First Union Mortgage Corp. (In re Fisher)*, 80 B.R. 58, 61–62 (Bankr.M.D.N.C.1987) (refusing to use the bankruptcy court's equity powers to upset a proper and valid state court foreclosure proceeding after the court granted relief form the automatic stay).

■ Notwithstanding the findings of the above-listed authorities, the better rule is that the act of lifting the automatic stay is not analogous to an abandonment of the property. *In re Ridgemont Apartment Assocs.*, 105 B.R. 738, 741 (Bankr.N.D.Ga.1989). If the two provisions were analogous, Section 554 would be superfluous in any case in which relief from stay was granted. This result would conflict with the principle that

the Court should read and apply the plain language of the Bankruptcy Code. *Patterson v. Shumate*, —— U.S. ——, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992).

■ "The effect of abandonment by a trustee ... is to divest the trustee of control over the property because once abandoned, property is no longer a part of the bankruptcy estate." *Wallace, III v. Enriquez (In re Enriquez)*, 22 B.R. 934, 935 (Bankr.D.Neb. 1982) (citations omitted). Relief from an automatic stay entitles the creditor to realize its security interest or other interest in the property, but all proceeds in excess of the creditor's interest must be returned to the trustee. *Killebrew v. Brewer (In re Killebrew)*, 888 F.2d 1516, 1520 (5th Cir.1989). Abandonments are irrevocable, and to treat an abandonment as identical to relief from the automatic stay is inconsistent with the principle that property once abandoned may not be recovered by the bankruptcy estate. *Id.; accord Jones v. Star Bank (In re Angel)*, 142 B.R. 194, 198 (Bankr.S.D.Ohio 1992) ("Relief from stay did not effectuate an abandonment.... In a bankruptcy context, only abandonment constitutes a waiver of a trustee's interest.").

■ The livestock sale was a sale of estate property. The livestock sale was completed by January 10, 1992, which was prior to when the Report was filed and the case was closed. This property, which was not specifically listed in the Report as being abandoned, was sold by the creditors prior to the order which closed the case. If the trustee had intended to abandon the property during the pendency of the case, he could have filed a formal abandonment motion pursuant to Section 554(a), but since he did not, the Court concludes that the livestock were not abandoned by the trustee, and thus, were administered as part of the estate.

■ The crop assets and the machinery assets were also administered during the bankruptcy case as part of the estate and not abandoned. The trustee's Report was filed on January 24, 1992. Exhibit D. However, as discussed above, the abandonment was not effective until the case was closed on March 24, 1992 pursuant to Section 554(c). Had the

trustee wanted to exclude the crops or the machinery from the bankruptcy estate, the trustee could have filed a motion to abandon the crops and the machinery and noticed the motion to all parties before or after the order granting relief from the automatic stay was entered and before the sale was held. Since he did not, the property remained property of the estate at the time the motion for relief was granted.

The *Joint Motion for Relief from Stay* provides additional support for the conclusion that the crops and the machinery were administered as part of the bankruptcy estate. The motion dated February 4, 1992, long prior to the sale and prior to the date the case was closed and after the Report was filed, states that the proceeds from the crop sale and from the machinery sale were to be distributed as follows:

8. In order to expedite the liquidation of the collateral ... and to minimize the expenses the Bank, [Cropmate], and *the Trustee* have agreed as follows:

a) The Bank will immediately liquidate the grain and apply the net proceeds on the loan.

b) The Bank will then liquidate the farm machinery as soon as this can be done free of the quarantine and apply the net proceeds to the loan.

c) After payment of the Bank's secured claim, ... the proceeds will be applied to the secured claim of [Cropmate].

d) After payment of [Cropmate]'s secured claim, ... *the proceeds will be paid to the Trustee in bankruptcy.*

9. The agreement of the Debtor's attorney and *the Trustee* to this agreement are shown by their signed consents to this application of the Bank and Fertilizer Company.

Exhibit E, ¶¶ 8 & 9 (emphasis added). The trustee consented to the joint motion for relief on February 7, 1992. United States' Exhibit 1.

■ The trustee may not retain a contingent interest in the proceeds of a sale of the estate's property in a consent to a motion for relief from the automatic stay and then claim that the property was abandoned be-

cause no proceeds were actually received from the sale of the crops or the farm machinery. The retention of an interest in the proceeds from the crop sale and the machinery sale is direct evidence that these assets were in fact part of the bankruptcy estate and were administered as such when the relief from the stay was granted. Abandonment is irrevocable, and therefore, the trustee may not retain the beneficial aspects of certain property, while abandoning the burdensome aspects. 4 COLLIER ON BANKRUPTCY ¶ 554.02[2], at 554–7 to 554–8 (15th ed. 1994).

The joint motion for relief shows that the trustee retained an interest and did not intend to abandon this property. The fact that the sale did not take place prior to the case being closed is not relevant because the sale was conducted in conjunction with the order granting relief from the automatic stay which reserved to the trustee an interest in the proceeds of the property to be sold.

*Conclusion*

The United States' motion for summary judgment is denied. The livestock sale, the crop sale, and the machinery sale were conducted as part of the administration of this bankruptcy case. Any proceeds remaining after the payment of secured claims would have accrued to the benefit of the estate and not to the debtor. Therefore, the tax liabilities resulting from the sales also accrue to the bankruptcy estate and not to the debtor.

The debtor did not make a cross motion for summary judgment but the Court finds that summary judgment should be granted in the debtor's favor and against the United States, the trustee, and the State of Nebraska Department of Revenue. All parties agree on the underlying facts in this case and have not demonstrated that an issue of material fact remains, and the debtor is entitled to summary judgment as a matter of law. The State of Nebraska has represented to the Court that it will be bound by the decisions which regard the United States. The trustee participated in the summary judgment hearing and briefed the issue for the Court. In this instance, it is permissible to enter summary judgment in favor of the non-moving party. *Johnson v. Bismarck Pub. Sch. Dist.,* 949 F.2d 1000, 1004 (1991).

Separate judgment to be entered.