# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 06-3280

_____

In re: Brook Valley VII, Joint Venture,     *
                                            *
                    Debtor,                 *
                                            *
Rick D. Lange,                              *
                                            *
                    Appellee,               *
                                            *
        v.                                  *
                                            *
Robert C. Schropp; Leo E. Dahlke;           *
Phoenix Properties, LLC; Phoenix            *
Properties, of Brook Valley 1, LLC;         *
Phoenix Properties, of Brook Valley 2,      *
LLC; R&L Valley Properties, LLC;            *   Appeal from the United States
RCS & Sons, Inc.,                           *   Bankruptcy Appellate Panel for the
                                            *   Eighth Circuit.
                    Appellants,             *
                                            *
_____                       *
                                            *
In re: Brook Valley IV, Joint Venture,      *
                                            *
                    Debtor,                 *
                                            *
Rick D. Lange,                              *
                                            *
                    Appellee,               *
                                            *
        v.                                  *
                                            *
Robert C. Schropp; Leo E. Dahlke;           *

RCS & Sons, Inc.; Phoenix Properties, LLC; Phoenix Properties, of Brook Valley 1, LLC;  Phoenix Properties, of Brook Valley 2, LLC; R&L Valley Properties, Properties, LLC,

    Appellants,

_____

In re: Brook Valley VII, Joint Venture,

    Debtor,

Rick D. Lange,

    Appellee,

    v.

Robert C. Schropp; Leo E. Dahlke; Phoenix Properties, LLC; Phoenix Properties, of Brook Valley 1, LLC; Phoenix Properties, of Brook Valley 2, LLC; R&L Valley Properties, LLC; RCS & Sons, Inc.,

    Appellants,

_____

In re: Brook Valley IV, Joint Venture,

    Debtor,

Rick D. Lange,

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

-2-

```
                                          *
          Appellee,                        *
                                          *
          v.                               *
                                          *
Robert C. Schropp; Leo E. Dahlke;         *
RCS & Sons, Inc.; Phoenix Properties,     *
LLC; Phoenix Properties, of Brook         *
Valley 1, LLC; Phoenix Properties, of     *
Brook Valley 2, LLC; R&L Valley           *
Properties, LLC,                          *
                                          *
          Appellants.                      *
```

_____

Submitted: March 14, 2007
Filed: August 6, 2007

_____

Before COLLOTON, HANSEN, and GRUENDER, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Rick D. Lange, the bankruptcy trustee for debtors Brook Valley IV, Joint Venture, and Brook Valley VII, Joint Venture, brought suit against Robert C. Schropp, Leo E. Dahlke, and several entities controlled by Schropp and/or Dahlke. Lange alleges that Schropp and Dahlke breached their fiduciary duties to the bankruptcy estates and converted property of the estates. After a two-day trial, the bankruptcy court concluded that Schropp and Dahlke had violated their fiduciary duties. To remedy this breach, the court imposed a constructive trust on their gains from the sale of the properties and awarded damages. Both sides appealed to the Eighth Circuit Bankruptcy Appellate Panel (BAP), which affirmed the bankruptcy court's finding that Schropp and Dahlke had breached their fiduciary duties. *Lange*

*v. Schropp* (*In re Brook Valley IV*), 347 B.R. 662 (8th Cir. BAP 2006). As to the remedy, the BAP approved the bankruptcy court's imposition of a constructive trust, and directed the award of additional damages beyond those granted by the bankruptcy court. We affirm the ruling of the BAP.

I.

Schropp and Dahlke were partners in thirteen commercial real estate partnerships with Prime Realty, an entity controlled by James McCart. The debtors, Brook Valley IV and Brook Valley VII, were two of these partnerships, with each owning a single commercial property in Omaha. In September 2001, a dispute arose between the partners in the Brook Valley joint ventures. In response to this falling out, McCart's company (Prime Realty) filed suit to dissolve all thirteen partnerships, including the two at issue in this appeal. By March 2002, several lenders had foreclosed on the partnerships' properties, causing Schropp, Dahlke, and Prime Realty to lose substantial sums of money. As a result, Prime Realty filed for bankruptcy protection in March 2002.

The Brook Valley partnerships suffered a similar fate. When the initial construction loans came due, the primary lender, First National Bank of Omaha, refused to extend the repayment term, forcing the Brook Valley partnerships to file for bankruptcy on April 2, 2002. In addition to the mortgage with First National, the properties were allegedly encumbered by liens held by Darland Construction Company and Prime Realty, though there was some dispute as to the validity of these liens. After filing for bankruptcy, both partnerships acted as debtors in possession under the exclusive control of Schropp and Dahlke.

Seventeen days after filing for bankruptcy protection, Schropp and Dahlke, acting on behalf of the bankruptcy estates, consented to a foreclosure sale of the two Brook Valley properties. Prime Realty, the entity controlled by McCart and a partner

in both ventures, objected to the sale, arguing that it did not serve the interests of the bankruptcy estates. McCart argued that the properties had substantial equity and produced sufficient rents to service the debt to First National. Concerned that Schropp and Dahlke were unwilling to act in the estates' interests, Prime Realty requested the appointment of a trustee. After the bankruptcy court denied this request, McCart remained convinced that the properties were more valuable than Schropp and Dahlke had acknowledged, and he attempted to buy the properties at the foreclosure sale. Because of Prime Realty's precarious financial position, McCart could not raise the necessary capital.

The foreclosure sale occurred on September 24, 2002. The winning bidder, at a combined cost of $2,406,430 for both properties, was Phoenix Properties LLC, an entity controlled by Schropp and Dahlke. Schropp and Dahlke did not disclose their controlling interest in Phoenix Properties. At the time of the sale, both Great Western Bank and First National conducted appraisals of the properties. Great Western appraised the properties at $3,310,105, while First National valued them between $2,480,000 and $3,700,000. These appraisals suggest that Phoenix purchased the properties at a considerable discount. Thus, the decision to consent to the foreclosure sale had proved lucrative for Schropp and Dahlke, if not for the bankruptcy estates and the creditors.

Schropp and Dahlke financed most of the acquisition with a loan from Great Western Bank, while an entity called Phoenix Brook Valley Re-Cap provided an additional $600,000. The terms of the foreclosure sale required all bidders other than First National to pay in cash the amount of the estates' debt to First National. Any amount beyond this would be paid to the bankruptcy court pending a determination of the priority of the remaining liens. Phoenix Properties failed to abide by this stricture, purporting to "credit bid" the amount of the Darland lien, rather than pay this amount to the bankruptcy court, as required by the terms of the sale.

Shortly after the foreclosure sale, in November 2002, McCart discovered that Schropp and Dahlke had been on both sides of the foreclosure sale as controlling partners of both Phoenix Properties and the Brook Valley partnerships. Upon learning this fact, Prime Realty filed another motion requesting the appointment of a trustee, and accused Schropp and Dahlke of secretly buying estate property. Schropp and Dahlke responded by denying this accusation:

> Great Western Bank entered into a transaction with Phoenix Properties, LLC. Phoenix Properties, LLC also apparently entered into a transaction with Phoenix Brook Valley Re-Cap, LLC. The purpose of both transactions was apparently to provide financing to Phoenix Properties to allow it to bid at the trust deed foreclosure sale conducted by the First National Bank of Omaha. Both of these transactions and the supporting documents were entered into between parties who are not parties to this bankruptcy proceeding. Those private transactions which apparently provided the financial resources for Phoenix Properties, LLC to bid on and buy the real estate being sold at public auction have nothing to do with this bankruptcy case.

(Appellee's App. 109, 118).

This response, of course, did not acknowledge that Schropp and Dahlke had controlling interests in both the debtors in possession and Phoenix Properties. The bankruptcy court found it "misleading," (Add. at A32), and concluded that "Mr. Schropp and Mr. Dahlke, through their counsel, who were also counsel for the debtors, went to a lot of trouble to keep the ownership of Phoenix Properties a secret from the court and from counsel for Prime Realty." (*Id*. at A33).

On June 10, 2004, all of the debtors' assets having been sold, the bankruptcy court converted the case to a Chapter 7 proceeding and appointed the Appellee, Rick Lange, as trustee of both estates. This order mooted Prime Realty's motion for appointment of a trustee. Lange investigated Prime Realty's accusations and then

commenced this suit against Schropp, Dahlke, and several entities they controlled. The parties to this suit agreed that the Brook Valley properties should be sold, with the net proceeds to be held by the court. After paying off debt, the sales generated a net profit of $865,938.95 on the two properties.

After a two-day trial, the bankruptcy court found in the trustee's favor and imposed a constructive trust on the net proceeds of the sale. In addition, the court found that $146,862.35, which Schropp and Dahlke "credit bid" at the foreclosure sale but never paid, was property of the bankruptcy estates and had been converted by Schropp and Dahlke. The bankruptcy court also found that the net cash flow earned by the partnerships in the period between the filing for bankruptcy and the foreclosure sale ($86,581.32, plus interest) was property of the estate, and the court awarded that amount to the trustee. The court nonetheless concluded that the last two amounts would not be due if Schropp and Dahlke complied with the order establishing a constructive trust. The court also declined to award damages for operating profits generated by the properties after the sale to Phoenix Properties.

Both sides appealed the bankruptcy court's judgment to the BAP, which affirmed the bankruptcy court in most respects, but found the trustee entitled to all of the damages, without regard to whether Schropp and Dahlke complied with the court's constructive trust order. *Brook Valley*, 347 B.R. at 677-78. The BAP also awarded damages based on the profits that Schropp and Dahlke earned from operating the properties after the foreclosure sale. *Id.* at 678. Like the BAP, we review the bankruptcy court's legal conclusions *de novo* and its findings of fact for clear error. *Debold v. Case*, 452 F.3d 756, 761 (8th Cir. 2006).

II.

Schropp and Dahlke argue that the trustee's action against them is an impermissible collateral attack on the bankruptcy court's order allowing the debtors

to proceed with the foreclosure sale. In their view, property interests acquired at a foreclosure sale are "good against the world" and thus are not subject to later attack by the trustee.

Once a sale of assets has been approved by a final order of the bankruptcy court, it is "a judgment that is good as against the world, not merely as against parties to the proceeding." *Regions Bank v. J.R. Oil Co., LLC*, 387 F.3d 721, 732 (8th Cir. 2004). Under this standard, property rights acquired at a foreclosure sale cannot be challenged unless the procedural rules allow for a collateral attack. *See* Fed. R. Civ. P. 60(b); Fed. R. Bankr. P. 9024. Thus, if the trustee discovers that the order permitting a foreclosure sale has been obtained wrongfully, Rule 60(b) governs his ability to obtain relief from the otherwise final judgment.

We conclude, however, that Rule 60(b) does not apply in this circumstance. This action does not directly attack the validity of the foreclosure sale. Instead, the trustee alleges a breach of fiduciary duty and requests that the gains enjoyed by Schropp and Dahlke be placed in a constructive trust, to be conveyed to the estates. The court need not set aside the judgment approving the foreclosure sale to effect a disgorgement of these allegedly ill-gotten gains. Thus, the trustee's action is not an impermissible collateral attack on a final sale, because he does not seek to abrogate the foreclosure sale. Rather, he seeks a remedy for an alleged breach of fiduciary duty, where the remedy presumes the continued validity of the foreclosure sale itself.

Schropp and Dahlke contend that the properties no longer belonged to the bankruptcy estates at the time of the foreclosure sale, so that bidding at the foreclosure sale could not constitute a breach of fiduciary duty. The trustee maintains that an order permitting a foreclosure sale does not release the property from the estate, and that because the debtors did not "abandon" the properties, the properties remained part of the estates until the sale was consummated. 11 U.S.C. § 554(d) ("Unless the court

-8-

orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate.").

When a bankruptcy court lifts the automatic stay, it merely removes an injunction barring creditors from bringing suit against the debtor. *Catalano v. Commissioner*, 279 F.3d 682, 686 (9th Cir. 2002). "Although the property may pass from the control of the estate, that does not mean that the estate's interest in the property is extinguished." *Id.* "Relief from an automatic stay entitles the creditor to realize its security interest . . . in the property, but all proceeds in excess of the creditor's interest must be returned to the trustee." *Nebel v. Richardson* (*In re Nebel*), 175 B.R. 306, 312 (Bankr. D. Neb. 1994). Because the estate is entitled to any proceeds in excess of the amount owed, *id.*, the estate retains a property interest so long as state law recognizes the underlying property right. Therefore, an order lifting the automatic stay, on its own, does not remove the property from the bankruptcy estate.

Notwithstanding this interpretation of federal law, Schropp and Dahlke argue that the foreclosure sale extinguished the estates' interest in the property under state law, which determines the nature and extent of any property interest. *See N.S. Garrott & Sons v. Union Planters Nat'l Bank of Memphis* (*In re N.S. Garrott & Sons*), 772 F.2d 462, 466 (8th Cir. 1985). If lifting the automatic stay had extinguished the underlying property interests, it is immaterial that any remaining interests would be part of the estates. Schropp and Dahlke point out that Nebraska law does not provide a debtor the right to cure where notice of default is given and the one-month cure period has expired. Neb. Rev. Stat. § 76-1012. Nor does Nebraska law give a mortgagor a right to redeem property after the foreclosure sale has occurred. Neb. Rev. Stat. § 76-1010(2). Schropp and Dahlke infer from these provisions that a bankruptcy estate has no remaining property interest once a bankruptcy court has ordered a foreclosure sale.

We disagree. Prior to the foreclosure sale, the mortgagor retains the right to pay the note in full and retake the property. Because the Brook Valley partnerships retained this right, their interests in the properties were not extinguished until the foreclosure sales occurred. *See Butts v. Hale*, 59 N.W.2d 583, 586-87 (Neb. 1953); *In re Jones*, 214 B.R. 492, 493 (Bankr. D. Neb. 1997). Thus, because the properties were part of the estates at the time of the foreclosure sale, we must decide whether Schropp and Dahlke acted improperly by bidding. The bankruptcy court held that there is a *per se* prohibition on debtors in possession purchasing estate property at a foreclosure sale. *See also In re Rahe*, 178 B.R. 801, 802 (Bankr. D. Neb. 1995). On appeal, the BAP ruled that while there was no *per se* prohibition, Schropp and Dahlke violated their fiduciary duties in this case by consenting to the foreclosure sale and then bidding. In this appeal, Schropp and Dahlke argue that there is no blanket prohibition on such bidding, and that they did not act improperly by bidding at the foreclosure sale.

Debtors in possession and those who control them owe fiduciary duties to the bankruptcy estate. *CFTC v. Weintraub*, 471 U.S. 343, 355 (1985); *Wolf v. Weinstein*, 372 U.S. 633, 649-50 (1963). Thus, the partners in a bankrupt partnership, acting as a debtor in possession, must run the business as agents of the bankruptcy estate, and not for their own personal gain. The fiduciary obligation consists of two duties: the duty of care and the duty of loyalty. 7 *Collier on Bankruptcy* ¶ 1107.02[4] (15th ed. rev. 2006). The duty of care requires the fiduciary to make good-faith decisions that can be attributed to a rational business purpose. *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992). In general, courts do not second-guess business decisions made in good faith. *Id.*

The duty of loyalty comes into play when there appears to be a conflict between the interests of the fiduciary and the entity to which he owes loyalty. For a debtor in possession, this duty "includes an obligation to refrain from self-dealing, to avoid conflicts of interests and the appearance of impropriety, to treat all parties to the case

fairly and to maximize the value of the estate." 7 *Collier on Bankruptcy* ¶ 1107.02[4]. "Courts have held that managers of debtors in possession breached their duty of loyalty by . . . participating as an undisclosed bidder at an auction of estate property." *Id.*; *see Ross v. Kirschenbaum* (*In re Beck Indus., Inc.*), 605 F.2d 624, 636 (2d Cir. 1979).

Though some courts – including the bankruptcy court in this case – have held that bidding for estate property always violates the debtor in possession's duty of loyalty, *see Rahe*, 178 B.R. at 802, we need not adopt this blanket rule to conclude that Schropp and Dahlke violated their duties here. Only seventeen days after filing the bankruptcy petitions, Schropp and Dahlke consented to relief from the automatic stay. This consent implicitly represented to the court that Schropp and Dahlke believed foreclosure to be in the estates' interests. This could be the case only if the properties could not be operated profitably on the estates' behalf. In fact, the properties remained profitable after the partnerships filed for bankruptcy, and the appraisals of the property revealed substantial equity. Schropp and Dahlke proceeded to bid secretly at the foreclosure sale and take possession of the properties unencumbered by any duties to the bankruptcy estates. Rather than searching for financing to make their own purchase of the properties, Schropp and Dahlke "should have been making efforts to obtain financing on behalf of the *Debtors* to salvage the properties." *Brook Valley*, 347 B.R. at 674 (emphasis in original).

When a transaction involving an insider is challenged as breaching the insider's duty of loyalty, the fiduciary must prove that the transaction was fair and reasonable. *Norlin Corp. v. Rooney, Pace, Inc.*, 744 F.2d 255, 265 (2d Cir. 1984). Schropp and Dahlke have failed to carry this burden. Initially, they caused the debtors to consent to relief from the automatic stay. Then, they secretly bid at the foreclosure sale, paying considerably less than the appraised value of the properties. After Prime Realty objected, Schropp and Dahlke misled the court about their holdings in Phoenix

Properties. The actions of Schropp and Dahlke support the BAP's conclusion that they were looking out for themselves rather than the estates.

## III.

## A.

Having concluded that Schropp and Dahlke violated their fiduciary duties to the estates, we turn to the issue of whether the bankruptcy court properly imposed a constructive trust on their gains from the sale of the two properties. Schropp and Dahlke argue that the price received at the foreclosure sale conclusively establishes the value of the properties at the time of the sale. Using this measure, any recovery by the trustee would be an undeserved windfall.

"A constructive trust is a relationship, with respect to property, subjecting the person who holds title to the property to an equitable duty to convey it to another on the ground that his acquisition or retention of the property would constitute unjust enrichment." *Knoell v. Huff*, 395 N.W.2d 749, 755 (Neb. 1986). Courts impose a constructive trust when one party has acquired property "under such circumstances that he or she may not in good conscience retain the beneficial interest in the property. In such a situation, equity converts the legal titleholder into a trustee holding the title for the benefit of those entitled to the ownership thereof." *Gottsch v. Bank of Stapleton*, 458 N.W.2d 443, 450 (Neb. 1990) (internal quotation omitted). In general, courts will not impose a constructive trust unless the title-holder obtained title by "fraud, misrepresentation, or an abuse of an influential or confidential relationship." *Balfany v. Balfany*, 476 N.W.2d 681, 684 (Neb. 1991) (internal quotation omitted).

In this case, Schropp and Dahlke used their position as insiders of the debtors in possession to urge a foreclosure sale and then secretly bid for the properties.

-12-

Because the properties turned out to be more valuable than the price paid at the foreclosure sale, this transaction proved to be profitable to Schropp and Dahlke. Schropp and Dahlke obtained these profits by abusing their position as debtors in possession, and any profits stemming from these transactions should thus benefit the estates, not Schropp and Dahlke. Thus, the bankruptcy court properly imposed a constructive trust on the profits earned by Schropp and Dahlke from the sale of the properties.

Schropp and Dahlke urge that the proper remedy should be measured differently. They argue that the commercial real estate market improved in the three years that Phoenix Properties held title, and that the gain from this uptick in the market should benefit them and not the estates. In their view, the court should calculate damages based on the amount by which Phoenix Properties underpaid at the foreclosure sale. And they argue that the price paid at the foreclosure sale conclusively establishes the fair market value of the properties at that time. *See BFP v. Resolution Trust Corp.*, 511 U.S. 531, 545 (1994) ("We deem, as the law has always deemed, that a fair and proper price, or a 'reasonably equivalent value,' for foreclosed property, is the price in fact received at the foreclosure sale, so long as all the requirements of the State's foreclosure law have been complied with.").

We agree with the BAP that this argument "ignores the nature of the Trustee's action" against Schropp and Dahlke. *Brook Valley*, 347 B.R. at 677. "The foreclosure sale was not inevitable; indeed, Chapter 11 is there to allow companies whose assets have equity to attempt to preserve such equity for the benefit of their creditors." *Id.* Rather than consenting to the foreclosure sale and then purchasing the property through another entity, Schropp and Dahlke could have continued to operate the buildings to preserve equity for the bankruptcy estates and creditors. McCart had alleged that the properties generated sufficient income and had sufficient equity to pay off the partnerships' debts. Similarly, the decision to re-purchase the properties

-13-

confirms that Schropp and Dahlke recognized that continuing to operate the properties would be profitable.

Had Schropp and Dahlke chosen to maximize the value of the estates, as the law required of them, they would have preserved the properties' equity for the bankruptcy estates, and the estates would have enjoyed any appreciation. As noted, a constructive trust is a remedy for unjust enrichment. *Knoell*, 395 N.W.2d at 755. Schropp and Dahlke seem to suggest that the proper remedy would allow them to retain profits they earned by abusing their position as insiders. We conclude that a constructive trust properly forces Schropp and Dahlke to disgorge their gains from the sale of these properties.

B.

The bankruptcy court also ordered Schropp and Dahlke to refund to the trustee the pre-foreclosure cash flow from the two Brook Valley properties ($86,581.32) and the amount that was "credit bid" at the foreclosure sale but never paid by Schropp and Dahlke ($146,862.35). Despite finding them liable for these funds, the bankruptcy court concluded that Schropp and Dahlke could satisfy this obligation by complying with the court's imposition of a constructive trust on the proceeds of the sale. The BAP concluded that the bankruptcy court had abused its discretion by allowing Schropp and Dahlke to avoid refunding this money to the estates. We review the bankruptcy court's award of damages for abuse of discretion. *Marvin Lumber and Cedar Co. v. PPG Indus., Inc.*, 401 F.3d 901, 917 (8th Cir. 2005).

Schropp and Dahlke argue that the BAP usurped the bankruptcy court's role when it modified the judgment to require payment of these damages regardless of whether Schropp and Dahlke complied with the court's constructive trust order. Our review persuades us, however, that the BAP was correct. The bankruptcy court offered no reason for its decision not to require the payment of these funds. In fact,

it concluded that the pre-foreclosure cash flow from the properties was "property of the bankruptcy estates" and directed that it "shall be paid to the trustee." Similarly, the bankruptcy court concluded that the use of the $146,862.35 by Schropp and Dahlke "was a conversion of property of the bankruptcy estates" and that Schropp and Dahlke had no right to distribute those funds without the court's consent. The court did not indicate that recovery of these funds would be duplicative, and the court's findings of fact make clear that Schropp and Dahlke owed these funds to the trustee. We see no reason for Schropp and Dahlke to retain these funds when the bankruptcy court correctly concluded that they were owed to the trustee.

## C.

The bankruptcy court refused to award the trustee the net cash flow from the three years that Phoenix owned and operated the properties. The court found that these profits "appear on paper to be positive and in a significant amount," but declined to award damages because there was no evidence that Phoenix Properties had distributed these profits to its partners, or that there was any excess cash. In short, the money seemed to have disappeared. The bankruptcy court appeared to defer to testimony that "the cash *may* have been reinvested in tenant improvements and, if so, would be included in the proceeds of sale which are being held by the clerk." (Add. at A35) (emphasis added). The BAP reversed, concluding that the bankruptcy court's finding was clearly erroneous. Because the properties' cash flow statements included operating expenses, the BAP reasoned that the net cash flow figure already took account of the cost of any tenant improvements. "If Schropp and Dahlke had evidence of other expenses, or other uses of the resulting funds, the burden was on them to offer such evidence and to account for the use of such funds." *Brook Valley*, 347 B.R. at 678. The BAP concluded that they had failed to meet this burden.

Schropp and Dahlke argue that the BAP erred by imposing a constructive trust on these funds, and improperly engaged in appellate fact-finding. We disagree. The

-15-

BAP did not impose a constructive trust on these funds; it merely directed an award of damages. *See Brook Valley*, 347 B.R. at 678 ("The bankruptcy court declined to award such damages . . . . We find that conclusion to be clearly erroneous.").

As for the amount of damages, the basis for the bankruptcy court's refusal to make this award is unclear, because the court did not explicitly find as a fact that Schropp and Dahlke reinvested the disputed funds into tenant improvements. The bankruptcy court merely stated that "there was testimony that the cash *may* have been reinvested in tenant improvements." In fact, there was little such testimony – only the statement by an acquaintance of Schropp and Dahlke that they were constantly reinvesting capital in the properties. The witness provided no reason why these expenditures would not appear in the partnerships' net cash flow figures. Citing this testimony, the bankruptcy court declined to find that the money actually *had* been reinvested in the properties.

Because any tenant improvements should have been included in the net cash flow computation, we conclude that a finding that the vanished cash had been invested in the properties would be clearly erroneous on this record. There was simply no evidentiary basis for the bankruptcy court to conclude that Schropp and Dahlke reinvested revenue into tenant improvements beyond that reflected in the cash flow figures. Those figures reflected all the money left over after the payment of operating expenses. Because there is no basis for finding that this money was actually reinvested in tenant improvements, we conclude that the bankruptcy court clearly erred in refusing to award these damages to the trustee.

\*    \*    \*

For the foregoing reasons, the ruling of the BAP is affirmed.

_____

-16-