OPINION
 

 THOMAS, Circuit Judge.
 

 In this appeal, we consider whether an order granting relief from an automatic stay always constitutes an abandonment of property under bankruptcy law. We conclude that it does not, and we reverse the decision of the Tax Court.
 

 I
 

 In 1988, Patrick Catalano purchased a residential condominium in San Francisco, California for $1.8 million. He financed $1.4 million of the purchase price with a loan from Wells Fargo Bank that was secured by a lien on Catalano’s residence. Catalano stopped making payments of either interest or principal on the Wells Fargo loan as of June 1,1994.
 

 Shortly thereafter, Catalano filed a voluntary petition for bankruptcy under Chapter 11 of the Bankruptcy Code, resulting in an automatic stay of any action to foreclose against the property. 11 U.S.C. § 362. Wells Fargo subsequently filed a motion in the Bankruptcy Court asking for relief from the automatic stay to permit it, and the trustee under the deed of trust, to foreclose on Catalano’s residence. Catalano opposed the motion on the ground that the value of the property was substantially greater than that of the outstanding debt. However, the Bankruptcy Court lifted the automatic stay to allow foreclosure, but, by stipulation of the parties, delayed the date upon which the creditor could exercise its rights to provide Catalano the opportunity to sell the property as a going concern.
 

 Thereafter, Wells Fargo proceeded with a trustee’s sale of the residence pursuant to California law. At the public auction, held on August 10, 1995, the property was sold to Wells Fargo for $1,215,000. As of that date, the outstanding principal balance of the Wells Fargo loan was $1,341,352.
 

 Catalano’s bankruptcy estate did not file a federal income tax return for 1995; rather, Catalano reported the foreclosure sale of his residence on his own tax return for that year. In his return, he listed both the selling price and his basis in the residence as $1,215,000, and therefore reported no
 
 *685
 
 gain on the sale. Further, Catalano claimed a deduction of $126,352 for interest, which was the amount of interest that, in Catalano’s view, had accrued on the Wells Fargo loan but had not been paid at the time of the foreclosure sale.
 

 Upon audit, the Internal Revenue Service disallowed this deduction, as well as deductions claimed for fees paid in the bankruptcy case and a loss on the rental of one of his boats. The Commissioner thus determined a deficiency in Catalano’s 1995 income tax in the amount of $70,198, and imposed a penalty in the amount of $14,040, for a substantial understatement of tax pursuant to § 6662(a) of the Internal Revenue Code.
 

 The Commissioner asserted two independent grounds for disallowing the deduction for mortgage interest. First, the Commissioner argued that, under § 541 of the Bankruptcy Code, Catalano’s residence was property of the bankruptcy estate at the time of the foreclosure, and that therefore all tax consequences of the sale should have fallen upon the bankruptcy estate, rather than the taxpayer. Second, the Commissioner argued that, in any event, Catalano could not be considered to have paid any interest in 1995 because the fair market value of his residence, which the Commissioner maintained was accurately reflected in the amount Wells Fargo bid at the foreclosure sale, was less than the outstanding principal on the loan. The Commissioner contended that, because the proceeds from the sale were insufficient to pay off the entire amount of outstanding principal, there were no proceeds remaining with which interest could have been paid.
 

 In response, Catalano first asserted that the property was removed from the bankruptcy estate when the Bankruptcy Court granted Wells Fargo’s request for relief from the stay and that, therefore, it was proper for him to report the tax consequences of the foreclosure on his 1995 tax return. In addition, Catalano contended that the fair market value of his residence at the time of the foreclosure was higher than the principal and interest due, and that he was therefore deemed to have paid the accrued mortgage interest in the foreclosure sale.
 

 Following a trial, the Tax Court issued a memorandum opinion on May 9, 2000, holding substantially in favor of Catalano. It held that, under Ninth Circuit law, the filing of an order lifting the automatic stay results in an abandonment of the property by the bankruptcy estate as a matter of law. Given that premise, the court allowed the interest deduction, reasoning that the amount realized upon the foreclosure sale of property subject to nonre-course debt includes both the principal amount of the indebtedness and any accrued interest. The Commissioner appeals.
 

 II
 

 “Abandonment” is a term of art with special meaning in the bankruptcy context. It is the formal relinquishment of the property at issue from the bankruptcy estate. Upon abandonment, the debtor’s interest in the property is restored
 
 nunc pro tunc
 
 as of the filing of the bankruptcy petition.
 

 Under the Bankruptcy Code, abandonment of property by the trustee requires notice and a hearing. 11 U.S.C. § 554. Specifically, § 554 provides:
 

 (a) After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.
 

 (b) On request of a party in interest and after notice and a hearing, the court
 
 *686
 
 may order the trustee to abandon any property of the estate or that is of inconsequential value and benefit to the estate.
 

 (c) Unless the court orders otherwise, any property scheduled under section 521(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title.
 

 (d) Unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate.
 

 In short, “[abandonment requires formal notice and a hearing.”
 
 Quarre v. Saylor (In re Saylor),
 
 108 F.3d 219, 221 n. 3 (9th Cir.1997). The formalities are important because abandonment is revocable only in very limited circumstances, such as “where the trustee is given incomplete or false information of the asset by the debtor, thereby foregoing a proper investigation of the asset.”
 
 Cusano v. Klein,
 
 264 F.3d 936, 946 (9th Cir.2001) (internal quotations omitted). Revocation of abandonment may only be accomplished by express order of the bankruptcy court.
 
 Id.
 

 Catalano argues that the order lifting the automatic stay in this case pursuant to 11 U.S.C. § 362 accomplished a
 
 de facto
 
 abandonment of the property under the Bankruptcy Code, despite the fact that no formal abandonment was obtained under 11 U.S.C. § 554. We have rejected such assertions in other contexts.
 
 See, e.g., Saylor,
 
 108 F.3d at 221 n. 3 (rejecting contention that the bankruptcy trustee’s determination that the case was a “no asset” case constituted a
 
 defacto
 
 abandonment of the property);
 
 Schwaber v. Reed (In re Reed),
 
 940 F.2d 1317, 1321 (9th Cir.1991) (holding that the “No Asset” report does not result in abandonment of property unless court closes the case). Indeed, to hold otherwise would be to repu-dite the express language of § 554.
 

 Further, Catalano misapprehends the portent of § 362. The fihng of a bankruptcy petition creates a bankruptcy estate comprised of the debtor’s legal or equitable interests in property wherever located and by whomever held. 11 U.S.C. § 541(a);
 
 Hong Kong & Shanghai Banking Corp., Ltd. v. Simon (In re Simon),
 
 153 F.3d 991, 996 (9th Cir.1998). As a result, “[t]he district court in which the bankruptcy case is commenced obtains exclusive
 
 in rem
 
 jurisdiction over all of the property in the estate.”
 
 Id.
 
 With the fifing of a bankruptcy petition, a self-executing automatic stay is imposed which “enjoin[s] the commencement or continuation of any judicial, administrative, or other proceedings against the debtor, enforcement of prior judgments, perfection of liens, and any act to collect, assess or recover a claim against the debtor that arose before the commencement of the case.”
 
 Gruntz v. County of Los Angeles (In re Gruntz),
 
 202 F.3d 1074, 1081-82 (9th Cir.2000) (en banc) (internal quotations omitted). When a bankruptcy court lifts, or modifies, the automatic stay, it merely removes or modifies the injunction prohibiting collection actions against the debtor or the debtor’s property. Although the property may pass from the control of the estate, that does not mean that the estate’s interest in the property is extinguished.
 
 See Jim Walter Homes, Inc. v. Saylors (In re Saylors),
 
 869 F.2d 1434, 1437 (11th Cir.1989). “Relief from an automatic stay entitles the creditor to realize its security interest ... in the property, but all proceeds in excess of the creditor’s interest must be returned to the trustee.”
 
 Nebel v. Richardson (In re Nebel),
 
 175 B.R. 306, 312 (Bankr.Neb. 1994) (citing
 
 Killebrew v. Brewer (In re Kittebrew),
 
 888 F.2d 1516, 1520 (5th Cir.
 
 *687
 
 1989)). Thus, an order lifting the automatic stay by itself does not release the estate’s interest in the property and “the act of lifting the automatic stay is not analogous to an abandonment of the property.”
 
 Id.
 
 at 311 (citing
 
 In re Ridgemont Apartment Assocs.,
 
 105 B.R. 738, 741 (Bankr. N.D.Ga.1989)).
 

 For this reason,
 
 Wilson v. Bill Barry Enters., Inc.,
 
 822 F.2d 859 (9th Cir.1987) does not compel a contrary result, as Cata-lano urges. In
 
 Wilson,
 
 we held that a state court had jurisdiction to determine property rights once the bankruptcy court granted relief from the automatic stay to allow a lessor to terminate its lease with the debtor-lessee. The fact that the state court had jurisdiction to determine post-relief property rights under state law does not mean that the estate’s interest in the property was extinguished. To the contrary, unless otherwise ordered, proceeds from the sale of collateral by a creditor in excess of the creditor’s interest following an automatic stay modification are payable to the estate.
 

 Thus, property is not considered abandoned from the estate unless the procedures specified in § 554 are satisfied. In short, an order lifting or modifying the automatic stay by itself does not constitute a
 
 de facto
 
 abandonment of the property from the bankruptcy estate.
 

 Ill
 

 Catalano also contends that the order granting relief from the automatic stay constituted an abandonment under the specific facts of this case. It is true that an order lifting or modifying the automatic stay
 
 may
 
 constitute an abandonment if the automatic stay order provides so explicitly. This is allowed by implication under the catchall subsection, 11 U.S.C. § 554(d), which states that
 
 “[ujnless the court orders otherwise,
 
 property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate.”
 
 Id.
 
 (emphasis added). Thus, under § 554(d), the bankruptcy court may issue an abandonment order in a bankruptcy proceeding that involves issues other than abandonment, such as automatic stay litigation. However, if an abandonment order is included within an order issued pursuant to another section of the Bankruptcy Code, the order must set forth the abandonment specifically and affirmatively, and parties in interest must have received the requisite notice and hearing required by § 554(a).
 

 In this instance, the bankruptcy court order granting relief from the stay did not mention abandonment in any fashion. It did postpone relief for a specified period to provide the debtor with an opportunity to sell the property as a going concern. However, this procedure — which is not unusual at all in bankruptcy proceedings — is not equivalent to formal abandonment. Indeed, if the creditor had sold the property for more than its secured interest, the excess proceeds would have been payable to the estate, not the debtor.
 

 Thus, absent a formal order of abandonment contained within the order granting relief from the stay, abandonment is not accomplished under § 554(d). Without such supporting language in this case, Ca-talano’s argument fails.
 

 Catalano also contends that, at the very least, abandonment occurred when the case was closed. Although this is doubtless true, it is of no avail to Catalano because the case was not closed in the year that Catalano claimed the tax deduction.
 

 IV
 

 In summary, an order granting relief from the automatic stay does not constitute a
 
 de facto
 
 abandonment of the property at issue. A relief order may also
 
 *688
 
 include an enforceable abandonment provision, but the intent to abandon under § 554 must be set forth explicitly in the order and parties in interest must have been afforded a notice of the intent to abandon and afforded a hearing. Because an order granting relief from the stay does not, as a matter of law, constitute property abandonment, and because the order in this case does not contain specific abandonment language, no property abandonment occurred in the case at bar. Thus, the Tax Court’s decision to allow the interest deduction was founded on an incorrect legal premise.
 

 REVERSED.