**PURSUANT TO INTERNAL REVENUE CODE SECTION 7463(b),THIS OPINION MAY NOT BE TREATED AS PRECEDENT FOR ANY OTHER CASE.**

T.C. Summary Opinion 2014-67

UNITED STATES TAX COURT

LEONARD B. SIMPSON AND JENNIFER A. SIMPSON, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4122-12S.                       Filed July 10, 2014.

D. Douglas Titus, for petitioners.

Patsy A. Clarke, for respondent.

SUMMARY OPINION

DEAN, Special Trial Judge:  This case was heard pursuant to the provisions

of section 7463 of the Internal Revenue Code in effect when the petition was filed.

Pursuant to section 7463(b), the decision to be entered is not reviewable by any

other court, and this opinion shall not be treated as precedent for any other case.

Unless otherwise indicated, subsequent section references are to the Internal

Revenue Code in effect for the years at issue, and Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent issued a statutory notice of deficiency to petitioners determining deficiencies in income tax of $13,522 for 2008 and $10,488 for 2009. Respondent also determined accuracy-related penalties under section 6662(a) of $2,524.40 for 2008 and $2,097.60 for 2009.

Petitioners have conceded that they received a premature distribution from an individual retirement account (IRA) in 2008. They have also conceded various items related to Leonard B. Simpson's (Mr. Simpson) activity reported on Schedules C, Profit or Loss From Business, and petitioners' activities reported on Schedules E, Supplemental Income and Loss, that will be discussed below. The issues remaining for decision[1] are whether petitioners are entitled to deduct: (1) for 2009 "points" paid in connection with acquiring real estate; (2) expenses reported on Schedules C for both years; and (3) expenses reported on Schedules E for both years and whether petitioners are liable for the accuracy-related penalty under section 6662(a) for both years.

---

[1]The amounts of petitioners' student loan interest deduction, self-employment tax, and self-employment tax deduction for each year are computational and will be resolved by the decision of the Court on the other issues.

Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits received in evidence are incorporated herein by reference. Petitioners resided in the State of Washington when the petition was filed.

Background

Mr. Simpson was employed full time as a security guard in 2008 and 2009, and he reported wages from Inter-Con Security and Guardsmark, LLC, for each of the years at issue. Jennifer Simpson worked for part of 2008 and then became unemployed. She listed her occupation on their income tax return for 2008 as unemployed and reported wages from MDS, Inc., as an Internet marketing manager. On January 9, 2008, Mrs. Simpson filed for bankruptcy under chapter 7 of the Bankruptcy Code[2] and was discharged from bankruptcy on June 12, 2008. In 2009 Mrs. Simpson remained unemployed and withdrew $6,000[3] from an IRA.

2008 "Points"

At trial petitioners produced a copy of two pages of a three-page settlement statement, Form HUD-1, concerning Mrs. Simpson's 2004 purchase of a residential property in Newcastle, Washington (Newcastle property). The

---

[2]See 11 U.S.C. secs. 701-767 (2006), so-called liquidating bankruptcy.

[3]There is no explanation in the record for the apparent discrepancy between Mrs. Simpson's testimony that she withdrew $6,000 from her IRA and respondent's $282 adjustment to her income.

settlement document reflects a first mortgage of $969,500 and a second mortgage of $346,200.  With leave of the Court, petitioners provided a Form 1098, Mortgage Interest Statement, for 2004 sent to Mrs. Simpson at an address in Seattle, Washington, reflecting a "loan discount" or "points" of $19,938.25 paid with respect to the "purchase of a principle [sic] residence".

Petitioners then introduced as evidence for 2008 a Form 1040X, Amended U.S. Individual Income Tax Return (version 2), showing an increase in "itemized deductions or standard deductions" of $17,038 to reflect the deduction of unamortized points, or prepaid interest, that petitioners assert was paid with respect to their home.

Sports Unlimited

In 1995 Mr. Simpson began an activity he called Sports Unlimited International (Sports).  Petitioners reported net losses on Schedules C for Sports for 2005, 2006, and 2007.  Petitioners filed with their Federal income tax returns Schedules C for Sports reporting net losses of $45,800 for 2008 and $18,630 for 2009.

Although petitioners reported gross income of $10,500 on Schedule C for 2008, the parties agree that petitioners did not earn any Schedule C gross income in 2008.  During Mr. Simpson's testimony, petitioners introduced into evidence a

Form 1040X for 2008 (version 1) along with a revised Schedule C for 2008 that reflects changes to the original Schedule C for Sports. The version 1 Form 1040X reflects the deletion of $10,500 of gross income and the deletion of both a deduction for advertising expenses of $43,200 and a deduction for meals and entertainment expenses of $2,700, all of which were reported on the original Schedule C filed with respondent.

Although petitioners reported Schedule C gross income of $4,800 for 2009, the parties agree that petitioners earned zero Schedule C gross income in 2009. During Mr. Simpson's testimony petitioners introduced into evidence a Form 1040X for 2009 along with a revised Schedule C that reflects changes to his original Schedule C for Sports for that year. The Form 1040X for 2009 reflects the deletion of gross income of $4,800 and the deletion of a deduction for an advertising expense of $17,500 reported on the original Form 1040 filed with respondent.

Schedule E

Petitioners listed on their Schedule E for 2005 eight real estate properties. In 2007, however, they began having difficulty "securing lines of credit and refinancing on the properties." They were then "pretty much underwater on most of the properties." Most of the properties were in Mrs. Simpson's name. By 2008

petitioners owned only property on Woodland Avenue in Kansas City (Woodland Avenue).  Petitioners offered no information explaining the circumstances of their disposal of any of the other properties.[4]

Petitioners filed Schedules E reporting losses of $5,857 for 2008 and $22,709 for 2009.  Petitioners introduced at trial a copy of a Schedule E for 2008 with "corrections":  a deduction for mortgage interest paid to banks of $1,948 was eliminated and the depreciation expense deduction was increased from $1,709 to $2,582.

Petitioners also introduced at trial a revised Schedule E for 2009.  The revised Schedule E for 2009 deleted $24,000 that had been reported as a deduction for repairs to Woodland Avenue.  The change was made because petitioners are "no longer deducting $24,000 in one year" but "depreciating and taking the deduction each year for 27 ½ years".  Petitioners increased their depreciation expense deduction on the 2009 Schedule E from $1,709 to $2,582.

Petitioners allege that the Forms 1040X for 2008 and 2009 incorporate the changes reported on the revised Schedules C and E.

---

[4]Although Mrs. Simpson went through a bankruptcy proceeding in 2008, the Court was not provided with any details about that process.  There was nothing in the record documenting a bankruptcy proceeding concerning Mr. Simpson.

Discussion

Generally, the Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer has the burden of proving that those determinations are erroneous. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). In some cases the burden of proof with respect to relevant factual issues may shift to the Commissioner under section 7491(a). The Court finds that petitioners have not argued or shown that they have met the requirements of section 7491(a) and the burden of proof does not shift to respondent.

"Points" Deduction for 2008

Interest is compensation for the use or forbearance of money. Deputy v. du Pont, 308 U.S. 488, 498 (1940). "Points" paid for the use or forbearance of money may be deductible as prepaid interest. Cao v. Commissioner, T.C. Memo. 1994-60, aff'd without published opinion, 78 F.3d 594 (9th Cir. 1996).

Petitioners contend that they are entitled to deduct for 2008 prepaid interest paid in connection with the 2004 acquisition of "their home" because the home was subject to foreclosure proceedings in 2008. As petitioners did not report for 2008 any gain or loss from the disposition of property in 2008, the Court infers that the foreclosure may have taken place as part of Mrs. Simpson's bankruptcy proceedings. If the foreclosure took place during the bankruptcy proceedings, the

bankruptcy estate bore the tax consequences of the foreclosure, including the deduction of accrued interest and points, absent an abandonment of the property by the estate. See Catalano v. Commissioner, T.C. Memo. 2000-82, rev'd on other grounds, 279 F.3d 682 (9th Cir. 2002); Bergman v. Commissioner, T.C. Memo. 1985-256. As noted earlier, no details about Mrs. Simpson's bankruptcy proceedings were provided to the Court, and no information about any foreclosure proceedings on petitioners' "home" was provided.

Petitioners did provide two pages of a three-page settlement statement, Form HUD-1, concerning the 2004 purchase by Mrs. Simpson of the Newcastle property showing that the "Loan Discount" paid to American Home Equity Corp. was $19,938.25. The address of the property is stated as 15222 SE 82nd Court, Newcastle, Washington. Notably, none of the tax forms in evidence (for the taxable years at issue, as well as for 2005 and 2007) lists this address--not as a mailing address for petitioners, not as an address on any of Forms W-2, Wage and Tax Statement, Forms 1098, or Forms 1099, Miscellaneous Income, and not as a rental property on any of the Schedules E. Nothing in the record suggests, let alone establishes, that the property for which petitioners may have paid these points was owned by either of them at any point beyond its acquisition in 2004.

Without more information concerning the home's ownership, its status as either a residence or investment property, or its sale or other disposition, the Court is unable to permit petitioners the deduction they now seek.

Schedule C and E Expenses

Respondent contends that petitioners have not shown, for the years at issue, that the Sports activity and the rental activity, if any, were actually conducted for profit or as businesses. But if they were so conducted, respondent contends that petitioners have adequately substantiated neither the amounts of the expenses deducted as a result of the activities nor whether the expenses were ordinary and necessary.

Deductions are allowed under section 162 for the ordinary and necessary expenses of carrying on an activity that constitutes the taxpayer's trade or business. Deductions are allowed under section 212(1) and (2) for expenses paid in connection with an activity engaged in for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income.

Generally, no deduction is allowed for personal, living, or family expenses. See sec. 262. The taxpayer must show that any claimed business expenses were paid primarily for business rather than personal, living, or family reasons. See

Rule 142(a); Walliser v. Commissioner, 72 T.C. 433, 437 (1979).  To show that the expense was not for personal reasons, the taxpayer must show that the expense was paid primarily to benefit his business, and there must have been a proximate relationship between the claimed expense and the business.  See Walliser v. Commissioner, 72 T.C. at 437.

With respect to either section 162 or section 212 the taxpayer must demonstrate a profit objective for the activity in order to deduct associated expenses.  See Jasionowski v. Commissioner, 66 T.C. 312, 320-322 (1976); sec. 1.183-2(a), Income Tax Regs.  The profit standards applicable for section 212 are the same as those used for section 162.  See Agro Sci. Co. v. Commissioner, 934 F.2d 573, 576 (5th Cir. 1991), aff'g T.C. Memo. 1989-687; Antonides v. Commissioner, 893 F.2d 656, 659 (4th Cir. 1990), aff'g 91 T.C. 686 (1988); Allen v. Commissioner, 72 T.C. 28, 33 (1979); Rand v. Commissioner, 34 T.C. 1146, 1149 (1960).

Section 1.183-2(b), Income Tax Regs., sets forth nine nonexclusive factors that should be considered in determining whether a taxpayer is engaged in a venture with a profit objective.  A taxpayer, in order to show that he was engaged in a trade or business, must show not only that his primary purpose for engaging in the activity was for income or profit but also that he engaged in the activity with

"continuity and regularity".  Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987).

Where a taxpayer has established that he has paid a trade or business expense, failure to prove the exact amount of the otherwise deductible item may not always be fatal.  Generally, unless prevented by section 274, the Court may estimate the amount of such an expense and allow the deduction to that extent.  See Finley v. Commissioner, 255 F.2d 128, 133 (10th Cir. 1958), aff'g 27 T.C. 413 (1956); Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930).  In order for the Court to estimate the amount of an expense, however, there must be some basis upon which an estimate may be made.  Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).  Without such a basis, an allowance would amount to unguided largesse.  Williams v. Commissioner, 245 F.2d 559, 560 (5th Cir. 1957).

Before examining the issues of whether petitioners have adequately substantiated the amounts of the expenses deducted on their Schedules C and E or whether the expenses were ordinary and necessary, it is appropriate that the Court consider petitioners' evidence of their carrying on a trade or business and holding property for the production of income.

Sports

Petitioners admit that they did not receive any income from the Sports activity in the years at issue even though they initially reported that they did. Mr. Simpson described his activity as a sports agent business. Mr. Simpson testified that he lived in a neighborhood where he was "surrounded by athletes who played for the Seahawks and Supersonics." He testified that he attempted to sign athletes to professional contracts and arrange "marketing and advertisement and endorsement" deals. Petitioner testified that in order to recruit young male athletes, he was required to incur expenses to go to bars, casinos, clubs, and parties and to take limousine rides and buy jewelry and airline tickets.

Petitioners submitted as evidence of Mr. Simpson's Sports activity: (1) business licenses from the city of Seattle in the name of Sports for the years 1998 through 2002 and for 2007; (2) two International Basketball Association player contracts from 1996 said to be "representative" of the "type of contracts he helped secure" along with other materials from 1996; (3) an invoice issued in the name of Sports dated January 10, 1997, along with miscellaneous correspondence dated in 1997; (4) miscellaneous correspondence dated in 1998 and 1999; and (5) the only item contemporaneous with a year at issue, a February 8, 2008, proposal

by "Platinum" to perform for Sports a marketing and advertising campaign that was attached to a player list from 1997.

Mr. Simpson testified that he did not sign any player contracts in 2007, 2008, or 2009. In fact, petitioners offered no evidence other than their own testimony that Mr. Simpson was conducting any sports agent activity in 2008 and 2009. The Court is not required to accept their self-serving testimony, particularly in the absence of corroborating evidence. See Geiger v. Commissioner, 440 F.2d 688, 689 (9th Cir. 1971), aff'g per curiam T.C. Memo. 1969-159; Urban Redev. Corp. v. Commissioner, 294 F.2d 328, 332 (4th Cir. 1961), aff'g 34 T.C. 845 (1960). Because of the inconsistencies and eccentricities in the record the Court declines to accept their testimony.

Since the Court concludes that Sports was conducted neither as a profit-seeking activity nor as a going concern in the years at issue it is not necessary to consider whether the deducted expenses were ordinary and necessary business expenses. Because petitioners have not shown for what purpose the claimed expenses might otherwise be deductible, the Court sustains respondent's determination on this issue.[5]

---

[5]As petitioners earned no gross income from Sports in the years at issue, they are not entitled to any deductions for an activity not engaged in for profit.

(continued...)

Rental Activity

Respondent disallowed petitioners' deduction on Schedule E of expenses for depreciation, mortgage interest, cleaning and maintenance, auto and travel, and repairs related to Woodland Avenue. Mr. Simpson testified that petitioners rented Woodland Avenue to his uncle, David Simpson, in 2008 and 2009, during which time Mr. Simpson stated he also had a major renovation performed on Woodland Avenue. According to Mr. Simpson, there was no written lease agreement and no rent receipts were provided to his uncle for rental payments made. There were also few receipts, if any, detailing petitioners' expenses.

Petitioners, having claimed a mortgage interest expense deduction of $1,948 on Schedule E for 2008, presented at trial a revised Schedule E deleting the interest deduction without explanation. Petitioners deducted $6,800 of repairs expenses that were changed on the revised Schedule E to "Painting and other contracted maintenance" expenses of $6,800. Petitioners' evidence that they paid expenses for auto and travel was Mr. Simpson's testimony that he had paid the expenses in cash. Likewise, Mr. Simpson testified that the expenses for cleaning

---

[5](...continued)
See sec. 183(b)(2). Petitioners did not deduct any sec. 183(b)(1) items on Schedule C.

and maintenance were all paid in cash to his father, "Leonard Senior", a general contractor.

As evidence of the repairs expenses for 2009 petitioners offered a series of copies of documents titled "Proposal" and "Invoice". The documents are stated to be from "James Peterson Remodeling" to Len Can Builders, Inc., the company owned by Mr. Simpson's father. Mr. Simpson testified that the proposals and invoices were passed from Mr. Simpson's father to Mr. Simpson and his father oversaw the work. Mr. Simpson testified that he paid the invoices in cash by delivering it "physically to workers".[6]

Petitioners offered no evidence on these issues other than their testimony. The Court concludes that petitioners have not shown that Woodland Avenue was held for rental in 2008 and 2009 and if it was they have not substantiated the disallowed expenses deducted on Schedule E. Respondent's determination on these issues is sustained.

---

[6]The Court notes that petitioners resided in the State of Washington at the time the petition was filed and that the notice of deficiency upon which this case is based was sent to them in Seattle, Washington. The income tax returns filed for the years at issue reflect petitioners' residence to be in Seattle, Washington. Woodland Avenue is in Kansas City, Missouri.

Accuracy-Related Penalty

Section 7491(c) imposes on the Commissioner the burden of production in any court proceeding with respect to the liability of any individual for penalties and additions to tax. Higbee v. Commissioner, 116 T.C. 438, 446 (2001); Trowbridge v. Commissioner, T.C. Memo. 2003-164, aff'd, 378 F.3d 432 (5th Cir. 2004). In order to meet the burden of production under section 7491(c), the Commissioner need only make a prima facie case that imposition of the penalty or addition to tax is appropriate. Higbee v. Commissioner, 116 T.C. at 446.

Respondent determined that for 2008 and 2009 petitioners underpaid a portion of their income tax because of negligence or intentional disregard of rules and regulations and that there is a substantial understatement of income tax. Section 6662(a) and (b)(1) and (2) imposes a penalty equal to 20% of the portion of the underpayment attributable to negligence or disregard of rules or regulations or a substantial understatement of income tax.

Negligence is defined as any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code, and the term "disregard" includes any careless, reckless, or intentional disregard. See sec. 6662(c). Negligence also includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly. Sec. 1.6662-3(b)(1), Income Tax Regs.

A "substantial understatement" includes an understatement of tax that exceeds the greater of 10% of the tax required to be shown on the return or $5,000. See sec. 6662(d); sec. 1.6662-4(b), Income Tax Regs. The tax shown on petitioners' joint return for 2008 was $4,909, and the tax shown on the return for 2009 was $628. Petitioners' correct tax liability for 2008 is $16,931, and for 2009 it is $7,696. Petitioners have a substantial understatement of tax for each of 2008 and 2009 since the understatement amount for each year will exceed both 10% of the tax required to be shown on the return for that year and $5,000. The Court concludes that respondent has produced sufficient evidence to show that the accuracy-related penalty under section 6662 is appropriate for 2008 and 2009.

The accuracy-related penalty will apply unless a taxpayer demonstrates that there was reasonable cause for the underpayment and that he or she acted in good faith with respect to the underpayment. See sec. 6664(c). Section 1.6664-4(b)(1), Income Tax Regs., specifically provides: "Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of * * * the experience, knowledge, and education of the taxpayer." The most important factor is the extent of the taxpayer's effort to assess his proper tax liability for the year. Id.

Petitioners did not show that there was reasonable cause for, and that they acted in good faith with respect to, the underpayments of tax for 2008 and 2009.

Therefore, respondent's determination of the accuracy-related penalty under section 6662(a) for 2008 and 2009 is sustained.

To reflect the foregoing,

<u>Decision will be entered under</u>

<u>Rule 155</u>.