

FILED

MAY 21 2019

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

# ORDERED PUBLISHED

# UNITED STATES BANKRUPTCY APPELLATE PANEL
# OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. EC-18-1098-SLB |
| AUGUSTINE PENA, III, | Bk. No. 1:12-bk-13170 |
| Debtor. | |
| AUGUSTINE PENA, III, | |
| Appellant. | **OPINION** |

Argued and Submitted on January 24, 2019
at Sacramento, California

Filed – May 21, 2019

Appeal from the United States Bankruptcy Court
for the Eastern District of California

Honorable  Fredrick E. Clement, Bankruptcy Judge, Presiding

———

Appearance: Sharlene Fay Roberts-Caudle argued for appellant.

———

Before: SPRAKER, LAFFERTY, and BRAND, Bankruptcy Judges.

SPRAKER, Bankruptcy Judge:

## INTRODUCTION

Chapter 7[1] debtor Augustine Pena, III, appeals from an order denying his application to recover $51,777.03 in unclaimed funds held in the bankruptcy court's registry. The unclaimed funds were rents his chapter 7 trustee collected from Pena's rental properties before the trustee abandoned those properties. The trustee initially tried to pay the rents to the creditors holding security interests in the underlying rental properties, but the secured creditors never cashed the trustee's checks. The trustee thereafter voided the checks and deposited the funds in the court's registry in accordance with § 347(a).

Pena claims that, because his former secured creditors are no longer entitled to the unclaimed funds, the monies should be paid to him instead. Pena argues that the trustee abandoned the rents when she abandoned the underlying rental properties. He reasons that, as a result, the estate has no interest in the funds the trustee deposited into the court's registry. We disagree. The chapter 7 trustee has administered these rents, and they remain property of the estate. As a result, ownership of the funds has never

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. All "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

reverted to the debtor. None of Pena's other arguments on appeal have any merit. Accordingly, we AFFIRM the bankruptcy court's order denying Pena's application for unclaimed funds.

## FACTS

Pena commenced his bankruptcy case by filing a voluntary chapter 11 petition in April 2012. At the time he filed his bankruptcy, Pena owned 30 parcels of real property, 29 of which were rental properties. In June 2012, the bankruptcy court sua sponte converted the case from chapter 11 to chapter 7 because of Pena's unauthorized use of cash collateral. Trudi G. Manfredo was appointed to serve as the chapter 7 trustee. Pena appealed the conversion order first to the United States District Court for the Eastern District of California and then to the Ninth Circuit Court of Appeals. He lost both appeals.

After conversion, Manfredo sought to abandon the rental properties. The bankruptcy court ruled, however, that during the pendency of the debtor's appeals, it lacked jurisdiction to order relief from stay or abandonment with respect to any of Pena's real property. Instead, the bankruptcy court entered an order under § 721 authorizing Manfredo to manage Pena's rental properties, including their maintenance and the collection of rents. Pursuant to that order, Manfredo managed the rental properties until Pena lost both appeals. Manfredo collected the rents from the rental properties, deposited them into the estate's account, and

3

disbursed them in accordance with her duties as chapter 7 trustee. After the Ninth Circuit affirmed conversion of the case to chapter 7, Manfredo abandoned the rental properties and shortly thereafter ceased collection of rents.[2]

The unclaimed funds at issue represent rents Manfredo collected from rental properties throughout California. Two of the properties were located in Compton, California. The other rental properties at issue were in Visalia, Corcoran, and Tulare, California. Each property was encumbered by a deed of trust, and the rents from the properties were treated as cash collateral of the respective secured creditors while Manfredo administered the properties. Manfredo abandoned the Tulare property in July 2014, and abandoned the other properties in August 2014. During the second half of 2015, several months before the bankruptcy case was closed, Manfredo sought to pay the secured creditors a combined total of $51,777.03 comprised of rents collected from the properties.[3]

Manfredo's cash disbursement records reflect that she tried

---

[2] Pena did not include in his excerpts of record copies of Manfredo's 2014 filings pursuant to which she formally abandoned the estate's interest in the subject parcels of real property. However, we can and do take judicial notice of these court filings and the other papers filed in Pena's bankruptcy case. *O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.)*, 887 F.2d 955, 957–58 (9th Cir. 1989).

[3] Pena did not present any evidence before the bankruptcy court, or argument on appeal, to trace the origins of the unclaimed funds. Accordingly, we consider all the unclaimed funds to have come from pre-abandonment rents, as the bankruptcy estate would have no interest in post-abandonment rents.

unsuccessfully to pay these amounts to the secured creditors several times. After those attempts failed, in February 2016, Manfredo paid the $51,777.03 in rent proceeds into the court registry. Manfredo's actions concerning the unclaimed funds were disclosed in her Final Account and Distribution Report ("Final Account").

Although Manfredo administered the rents on behalf of the secured creditors, the case was administered as a no asset case, and the Final Account proposed no distribution to Pena's unsecured creditors. Manfredo served the notice of the Final Account on all parties in interest, including Pena. The notice advised that if no objections were filed, a final decree would be entered and the case closed without further order. Neither Pena, nor anyone else, objected to the Final Account. The bankruptcy court entered a final decree and closed Pena's bankruptcy case on December 27, 2016.

Well over a year after the case was closed, on March 1, 2018, Pena filed an application seeking to recover the unclaimed funds without reopening the bankruptcy case.[4] According to Pena, none of the secured

---

[4] Whereas the application requested recovery of the entire $51,777.03 in unclaimed funds on deposit in the court's registry, Pena's legal brief in support of his application only sought $45,685.12 of the unclaimed funds. The difference between these two amounts – $6,091.91 – roughly equals the aggregate amount of rents collected from the Tulare property that later became unclaimed funds ($6,091.89). Pena did not submit with his application any evidence or law pertaining to Tulare property or the $6,091.89. Furthermore, the certificate of service accompanying his application reflects

(continued...)

5

creditors could establish a present entitlement to the unclaimed funds because the subject properties had been foreclosed upon or Pena was current on his mortgage payments. Pena stated that he conveyed the Compton properties to a third party in September 2014. He also advised that the secured creditors of the Visalia and Corcoran properties foreclosed on these properties in 2016. Nothing in the record demonstrates what happened to the Tulare property.

Pena further argued that, as a result of Manfredo's abandonment of the rental properties in 2014, the rental properties – and the rents Manfredo collected – should be treated "as if no bankruptcy case had been filed," in which case he would have been entitled to collect and use all rents absent any event of default under his security agreements with his secured creditors. Therefore, Pena concluded that he, and not his unsecured creditors, was entitled to the unclaimed funds.

Pena served the application on the secured creditors, but received no objections.[5] Still, the bankruptcy court disagreed with Pena. According to

---

[4](...continued)
that Pena did not attempt to serve any parties who might have claimed an interest in the Tulare property or the rents derived from that property. Pena does not mention the Tulare property in his brief on appeal either, further suggesting that he seeks to recover the unclaimed rents on the other properties but not those related to the Tulare property.

[5] Pena also served his application on Manfredo, who did not file a response either. However, the closing of the bankruptcy case discharged the trustee, and Pena did not seek to have the bankruptcy case reopened. Accordingly, Manfredo was no longer the trustee for the case when Pena filed his application.

6

the court, Manfredo's disbursement of the rents into the court's registry as unclaimed funds when the secured creditors failed to cash their disbursement checks was consistent with her statutory obligations under § 347.[6] Furthermore, the bankruptcy court held that, pursuant to 28 U.S.C. § 2042, the secured creditors had five years to claim the funds. The court noted that this time period was not close to running. If the five-year time period elapsed without the secured creditors successfully claiming the funds, the bankruptcy court opined that the funds should escheat to the United States. 28 U.S.C. § 2042.

More importantly, the bankruptcy court ruled that, as between Pena and his bankruptcy estate, the bankruptcy estate was entitled to the rents. The bankruptcy court rejected Pena's assertion that the unclaimed rents collected from the properties had been abandoned along with the properties in 2014, noting that rents were separate property of the estate under § 541(a)(6). The court explained that, under the distribution scheme imposed by § 726(a), it was the estate's unsecured creditors, not Pena, that were entitled to unclaimed rents if the secured creditors no longer had any

---

[6] § 347(a) provides:

Ninety days after the final distribution under section 726, 1226, or 1326 of this title in a case under chapter 7, 12, or 13 of this title, as the case may be, the trustee shall stop payment on any check remaining unpaid, and any remaining property of the estate shall be paid into the court and disposed of under chapter 129 of title 28.

entitlement to those funds. The court noted that Pena had disclosed $411,000 in unsecured debt that remained unpaid.

On March 29, 2018, the bankruptcy court entered an order denying Pena's application. Pena timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court err when it denied Pena's application to recover the unclaimed funds?

## STANDARD OF REVIEW

The issues raised by this appeal require us to construe the Bankruptcy Code and the federal statutes governing unclaimed funds. Issues of statutory construction are legal questions, which we review de novo. *Greenpoint Mortg. Funding, Inc. v. Herrera (In re Herrera)*, 422 B.R. 698, 709 (9th Cir. BAP 2010), *aff'd sub nom. and adopted*, *Home Funds Direct v. Monroy (In re Monroy)*, 650 F.3d 1300 (9th Cir. 2011).

## DISCUSSION

I.  **The Trustee Properly Administered The Rents As Property of the Estate.**

Generally speaking, a chapter 7 trustee administers property of the estate by liquidating the assets to cash and then distributing them to the

estate's creditors. *See* §§ 704(a)(1), 726; *see also Harris v. Viegelahn*, 135 S. Ct. 1829, 1835 (2015); 2 Collier Bankruptcy Practice Guide ¶ 26.03 (2018) ("Collier"); Handbook For Chapter 7 Trustees (U.S. Dep't Of Justice) (Oct. 1, 2012) at pp. 4-1, 4-33, ("Trustee Handbook").[7] Here, the trustee did not liquidate the rental properties but instead managed them for a time under court authorization pursuant to § 721. As part of her management of the rental properties, Manfredo transmitted the collected rents to Pena's secured creditors. After she abandoned the rental properties, Manfredo transmitted the remaining collected rents in the same manner. Pena never objected to any of Manfredo's transmittals to the secured creditors. In fact, he repeatedly has conceded in his appeal brief that the rents Manfredo collected and successfully distributed to the secured creditors were estate property. This is consistent with § 541(a)(6), which defines property of the estate to include: "[p]roceeds, product, offspring, **rents**, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case." (Emphasis added.)[8]

After the secured creditors failed to cash the unclaimed funds checks

---

[7] Available at https://www.justice.gov/ust/file/handbook_for_chapter_7_trustees.pdf/download (last viewed April 17, 2019).

[8] Except for his abandonment nunc pro tunc argument discussed below, Pena also has conceded that the rental properties were property of the bankruptcy estate until they were abandoned.

identified above, Manfredo took action consistent with § 347(a) and Rule 3011.[9] When a creditor fails to cash a chapter 7 trustee disbursement check within 90 days of the final distribution, the trustee must stop payment on the check and pay the funds into the court registry as unclaimed funds. § 347(a); Rule 3011; *see also* 2 Collier, at 26.18[4]; Trustee's Handbook, at p. 4-33. Thereafter, the "rightful owners" of the funds may claim them from the court registry. 28 U.S.C. § 2041.[10] The federal statutory scheme further provides:

> In every case in which the right to withdraw money deposited in court under section 2041 **has been adjudicated or is not in dispute** and such money has remained so deposited for at least five years unclaimed by the person entitled thereto, such court shall cause such money to be deposited in the Treasury in the name and to the credit of the United States. Any claimant

---

[9] Rule 3011 provides:

The trustee shall file a list of all known names and addresses of the entities and the amounts which they are entitled to be paid from remaining property of the estate that is paid into court pursuant to § 347(a) of the Code.

[10] 28 U.S.C. § 2041 provides:

All moneys paid into any court of the United States, or received by the officers thereof, in any case pending or adjudicated in such court, shall be forthwith deposited with the Treasurer of the United States or a designated depositary, in the name and to the credit of such court.

This section shall not prevent the delivery of any such money to the rightful owners upon security, according to agreement of parties, under the direction of the court.

entitled to any such money may, on petition to the court and upon notice to the United States attorney and full proof of the right thereto, obtain an order directing payment to him.

28 U.S.C. § 2042 (emphasis added).

Here, the secured creditors' rights to the rents Manfredo administered were undisputed at the time the bankruptcy court entered its final decree. Among other things, the final decree approved Manfredo's disbursement of the unclaimed funds into the court registry (pursuant to § 347 and Rule 3011) in the name of the secured creditors to whom Manfredo had determined the funds were owed. Under 28 U.S.C. §§ 2041 and 2042, the funds must remain in the court registry until their "rightful owner" with "full proof" of entitlement comes to claim them. If, after five years, the funds still remain unclaimed in the court registry, then they must be turned over to the United States Treasury. 28 U.S.C. § 2042.

In short, the bankruptcy court did not err in finding that the trustee properly administered the unclaimed rents.

## II.   The Secured Creditors' Entitlement To The Rents.

Pena does not seriously dispute that Manfredo properly administered the unclaimed rents. Citing 28 U.S.C. §§ 2041 and 2042, he contends that the unclaimed rents now belong to him because the secured creditors no longer are the rightful owners of the unclaimed rents. Pena argues that, after the bankruptcy estate abandoned the real properties, the Compton properties were conveyed to a third party, and the Visalia and

11

Corcoran properties were foreclosed. He argues that the secured creditors cannot prove a present entitlement to the funds, and this is why they never cashed the payments and never objected to his application for the funds.

As a general proposition of law Pena is correct that, if the secured creditors sought to collect the unclaimed funds deposited into the registry, they must prove they have "a 'present entitlement to the unclaimed funds sought.'" *In re Scott*, 346 B.R. 557, 559 (Bankr. N.D. Ga. 2006)(quoting *In re Acker*, 275 B.R. 143, 145 (Bankr. D.D.C. 2002)). A "claimant does not have a 'present entitlement' to unclaimed funds if the original secured claim has been brought current or satisfied, either through payment or foreclosure." *In re Pena*, 456 B.R. 451, 454 (Bankr. E.D. Cal. 2011) (unrelated to debtor)(quoting *In re Scott*, 275 B.R. at 559). Here, however, the secured creditors are not seeking to recover the unclaimed rents. Rather, Pena asserts that he is entitled to the unclaimed rents. Pena reasons that, since the secured creditors can no longer establish a present entitlement to these funds, state law governs and requires that the monies must be distributed to him. We need not determine what rights the secured creditors may currently have to the unclaimed rents because they remain property of the bankruptcy estate over which Pena has no interest.

## III. The Estate's Abandonment Of The Rental Properties Did Not Abandon Its Interest In The Collected Rents.

Pena acknowledges that the bankruptcy estate had an interest in the

rents prior to abandonment of the rental properties. He contends, however, that Manfredo abandoned any interest in the rents when she abandoned the real property. Since the secured creditors can no longer prove a present entitlement to the proceeds, and the bankruptcy estate abandoned any interest it had in the unclaimed rents, Pena reasons that the funds belong to him.

Abandonment is the "formal relinquishment of the property at issue from the bankruptcy estate." *Catalano v. C.I.R.*, 279 F.3d 682, 685 (9th Cir. 2002). Abandonment of an estate asset is governed by § 554, and can occur in one of three ways: (1) the bankruptcy trustee can obtain bankruptcy court authority to abandon the asset (*see* § 554(a)); (2) another party in interest can seek to compel the trustee to abandon the asset (*see* § 554(b)); or (3) abandonment may occur by operation of law – also known as a "technical abandonment" (*see* § 554(c)). No other party has sought abandonment of the rents under § 554(b). While Pena does refer to the abandonment of the unclaimed rents upon the closing of the case, he has not asserted any argument that the estate technically abandoned the unclaimed rents under § 554(c). Nor does the record provide any support for technical abandonment, as Manfredo administered the rents by paying the secured creditors she understood had rights in the cash collateral at the time she closed the bankruptcy case. This leaves abandonment under § 554(a) as the basis for Pena's interest in the unclaimed rents.

Pena contends that Manfredo's abandonment of the underlying rental properties must be given nunc pro tunc effect to the petition date. He argues that, if the rental properties are deemed to have been abandoned retroactively to the bankruptcy filing, this divests the bankruptcy estate of any interest in not only the rental properties themselves, but also the rents derived from those properties.

As a general rule Pena is correct that "[u]pon abandonment, the debtor's interest in the property is restored *nunc pro tunc* as of the filing of the bankruptcy petition."[11] *Catalano*, 279 F.3d at 685. "The purposes of

---

[11] Though retroactive application of abandonment is the general rule, it "is not a categorical imperative, to be blindly followed to a result that is unjust." *Wallace v. Lawrence Warehouse Co.*, 338 F.2d 392, 394 n.1 (9th Cir. 1964). The bankruptcy court concluded that, as between Pena and his unsecured creditors, the creditors, who were owed more than $411,000, had a superior right to the unclaimed funds. We agree. Pena's reliance on *Van Curen v. Great Am. Ins. Co. (In re Hat)*, 363 B.R. 123 (Bankr. E.D. Cal. 2007), is not persuasive. There, the chapter 11 trustee abandoned several farms, and permitted the debtor to farm the properties even prior to abandonment. *Id.* at 129, 132. When the crops failed, the estate claimed the insurance proceeds as property of the estate. *Id.* at 133-34. The debtor argued that the estate had no interest in the insurance proceeds based upon the prior abandonment of the farms, which included the crops. *Id.* at 141-42. The court held that, while abandonment did not deprive the estate of its insurance policy, retroactive application of the abandonment negated the estate's insurable interest in the crops and thus deprived the estate of any interest in the insurance proceeds. *Id.* Considering the equities before applying abandonment retroactively, the *Hat* court found that the estate's loss of its interest in the proceeds was not unjust given its realization that the estate would not be able to farm the properties and its decision to allow Hat to resume farming the properties prior to abandonment. *Id.* at 142. But whereas the equities in *Hat* supported retroactive abandonment of the farms and crops to prevent the estate from receiving a windfall from the debtor's efforts, in this case the windfall would result if Pena was to recover the rents while his unsecured creditors receive nothing. In any event, as we hold infra, abandonment of the rental properties did not alter the separate status of the rents as property of the estate.

retroactive vesting include to protect against the running of the statute of limitations, and to compensate the trustee for any cost he may have incurred in maintaining the property during his custody of it." *Morlan v. Universal Guar. Life Ins. Co.*, 298 F.3d 609, 617 (7th Cir. 2002) (internal citations omitted);  4 Norton Bankr. L. & Prac. 3d § 74:1 (2019).

As often noted, abandonment of an asset is not to be taken lightly as it removes the asset from the estate and returns it to the debtor.  *Pham v. United States Trustee (In re Pham)*, 2019 WL 77505, *4 (C.D. Cal. Jan. 2, 2019)(citing *Catalano*, 279 F.3d at 686). Before a trustee abandons property of the estate, she must give notice of the property to be abandoned. § 554(a); *Quarre v. Saylor (In re Saylor),* 108 F.3d 219, 221 n.3 (9th Cir. 1997). Moreover, the "intent to abandon an asset must be clear and unequivocal." *Reisinger v. Seneca Specialty Ins. Co.*, No. CV 3:07-1221, 2011 WL 13220212, at *7 (M.D. Pa. Mar. 21, 2011), report and recommendation adopted, No. 3:07CV1221, 2011 WL 2433681 (M.D. Pa. June 14, 2011) (citing *Catalano*, 279 F.3d at 686). Accordingly, "there is no abandonment without notice to creditors." *Sierra Switchboard Co. v. Westinghouse Electric Corp.*, 789 F.2d 705, 709 (9th Cir. 1986). For these very reasons, "there is no informal abandonment of property of the estate." *In re Hat*, 363 B.R. at 138.

Manfredo moved to abandon the rental properties, identifying the properties to be abandoned by street address. The required notice of abandonment stated only that the estate "intends to and will abandon the

15

following described real properties as burdensome and inconsequential value to the estate . . . ." The subsequent notices filed by Manfredo to effectuate the abandonments similarly were limited to abandonments of the rental properties. None of the notices ever mentioned the rents the estate had collected. Manfredo never sought, or gave notice of any intent, to abandon the remaining rents the estate had collected. Her actions speak loudly to a contrary intent as she was attempting to distribute the collected rents.

Pena does not distinguish between the unclaimed rents and the abandoned rental properties from which they were derived. He contends that abandonment of the rental properties resulted in abandonment of the rents. However, they are not the same. Section 541(a)(6) independently categorizes proceeds from property of the estate. As distinct property of the estate, a trustee must clearly state her intent to abandon such rents under § 554(a).

In an unpublished decision, the District Court for the Central District of California recently considered whether the abandonment of rental properties precluded the chapter 7 trustee from denying the debtors their discharge under § 727(a)(2) for improperly transferring post-petition rents. *In re Pham*, 2019 WL 77505, *3-5.  In *Pham*, the debtors argued that the trustee could not prove they had transferred property of the estate because the trustee had abandoned the rental properties that generated the rents.

16

The bankruptcy court rejected the debtors' argument, noting that the notice of abandonment referred only to the rental properties and not the rents. *Id.* at *2. Moreover, the bankruptcy court found it telling that the trustee had made demand on the debtors for the turnover of the missing rents, further evincing an intent not to abandon the rents. *Id.*

On appeal, the district court affirmed the denial of the discharge under § 727(a)(2) based on the debtor's transfer of property of the estate. *Id.* at *5. The court found that the rental proceeds were separate interests distinct from the real property, and agreed that the record failed to establish any intent to abandon the rental proceeds. Explaining its reasoning, the district court noted that "numerous courts have held that the abandonment of real property does not also abandon personal property that is related to, but separable from the real property, such as rental proceeds or insurance policies." *Pham,* 2019 WL 77505, * 5 (citing *Pierson v. Paris (In re Humeston)*, 83 F.2d 187, 189 (2d Cir. 1936);[12] *see also In re Hat*, 363 B.R. at 141-42 (abandonment of farms did not result in abandonment of insurance policies covering crops grown on the farms).

Pena's situation mirrors that of the debtor in *Pham*. In both cases, the trustees sought to abandon real property while attempting to administer

---

[12] In *Humeston,* Judge Learned Hand considered the effect of abandonment of real property on the bankruptcy estate's interest in encumbered rents and wrote: "even if the trustee did abandon the equity, he did not include the rents; the two were not inseparably linked." *In re Humeston*, 83 F.2d at 189.

rents from those properties. In *Pham*, the trustee was seeking turnover of the rents from the debtor. Here, Manfredo actually had collected the rents and was attempting to distribute them based on the interests as they existed at the time she closed the case. In neither situation did the trustee mention the rents within the notices of abandonment. Manfredo, like the trustee in *Pham*, did not abandon the rents she was attempting to administer.

Pena focuses upon the secured creditors' present entitlement to the unclaimed rents, but the bankruptcy court did not rule on this issue. Rather, it found that Pena was not entitled to the funds. Because the unclaimed rents remain property of the bankruptcy estate, the bankruptcy court did not err in denying Pena's application to recover those funds.

## IV. The Designation Of The Bankruptcy As A No Asset Case Is Irrelevant To The Determination Of The Property Of The Estate.

Pena also makes much of Manfredo's designation of his case as a no asset chapter 7 bankruptcy.[13] The designation of the case as a no asset case was based on the trustee's understanding that the secured creditors held continuing security interests against the rental properties and all rents she

---

[13] Pena attempts to argue on appeal that the unclaimed funds actually were surplus funds because some of the secured creditors to whom Manfredo mailed the checks affirmatively refused the rent payments in light of the pending foreclosure of the underlying rental properties. Pena's argument makes no sense and ignores the nature of the rents as property of the estate subject to the distribution requirements of § 726(a) if administered by the trustee.

collected that were generated by those encumbered properties. This assumption was manifested in the trustee's Final Account. No one, including Pena, objected to the trustee's proposed distribution to the secured creditors. If these lenders no longer have secured claims against the remaining rents, and those funds actually are now unencumbered, they nonetheless remain property of the estate available for distribution pursuant to the statutory scheme Congress enacted for chapter 7 cases, as set forth in § 726(a). *Viegelahn*, 135 S. Ct. at 1835; *see also Elliot v. Four Seasons Props. (In re Frontier Props., Inc.)*, 979 F.2d 1358, 1366-67 (9th Cir. 1992).

The designation of the bankruptcy as a no asset case is irrelevant to the question presented in this appeal and provides the debtor with no interest in the remaining rents. The fact that some additional action is required to properly administer these rents in light of Manfredo's prior Final Account does not alter the nature of the unclaimed funds as property of the estate. Rather, a party in interest such as an unsecured creditor or the United States Trustee should be afforded the opportunity to reopen the bankruptcy case, establish that the unclaimed rents are not encumbered, and modify the Final Account to permit distribution of the unclaimed rents to the unpaid creditors pursuant to § 726(a). That distribution scheme contemplates payment in full of all creditors, including interest, before the debtor can receive any distribution from the estate's assets. *Viegelahn*, 135 S. Ct. at 1835.

19

## CONCLUSION

For the reasons set forth above, we AFFIRM the bankruptcy court's order denying Pena's application seeking to recover the unclaimed funds.